[No. 24389.   Department Two.   August 15, 1933.]

`FRANK W. SHIELDS, *Respondent*, v. IRA CLEVELAND, *Appellant*.[1]

*Richards, Gilbert & Conklin,* for appellant.

*Snively & Bounds* and *Robt. J. Willis,* for respondent.

BLAKE, J.—The plaintiff brought this action to recover the sum of $2,667.70, alleged to have been advanced to defendant as a loan.   The defendant answered by way of general denial, and alleged the money advanced by plaintiff was in pursuance of a joint enterprise, engaged in by plaintiff and defendant, in the purchase and sale of apples; that the net result of the adventure was loss.   Defendant prayed for an accounting and judgment against plaintiff in such sum as might be found due him.   The court made findings

[1]Reported in 24 P. (2d) 437.

of fact favorable to plaintiff. From the judgment entered thereon, defendant appeals.

The parties were fruit brokers at Yakima. In 1927, and for some years prior thereto, respondent bought apples for the firm of Burton & Briel, of Richmond, Virginia. His operations in their behalf were very extensive. Appellant bought apples on a large scale from growers. In November, 1927, respondent approached appellant and suggested that an arrangement be made whereby appellant would purchase apples from growers and sell them to Burton & Briel. In other words, respondent was to furnish the customer, and appellant was to furnish the apples. By the terms of their agreement, as originally made, a guaranteed price of ninety-five cents per box was to be paid to appellant in cash on the shipment of each carload of apples. If there were any profit on the car over and above the guaranteed price, appellant and respondent were to divide it equally.

Pursuant to the agreement, four carloads of apples were shipped to Burton & Briel. These were shipped by Cleveland, and the guaranteed price was paid by Shields with his personal check. Thereafter, owing to some difficulty in financing the shipments on a cash basis, respondent asked appellant to ship the apples to Burton & Briel with bill of lading and sight draft attached. This, Cleveland declined to do, giving as his reason that the banks would not give him credit for more than eighty per cent of the amount of sight drafts before collection. Whereupon Shields proposed that, if Cleveland would ship under this method, he would advance the other twenty per cent of the amount of the guaranteed price. In other words, the sight draft would be drawn in the amount of the guaranteed price, and, upon shipment, Shields would pay Cleveland twenty per cent of the amount of the draft—it

being understood that, when the draft was honored, Cleveland was to return the advance.

As we understand the record, this is the complete contract. Nothing was said about method of shipment; nothing was said about what should be done with apples which might be rejected by Burton & Briel, or what adjustment or accounting should be made between appellant and respondent if, for any reason, Burton & Briel failed to honor the sight drafts. The arrangement was made wholly upon the assumption that Burton & Briel *would honor* the drafts. It is their failure so to do, and the failure of the appellant and respondent to provide for such a contingency, that gives rise to this controversy.

The twenty per cent advance made by Shields on thirteen cars is what is involved in this action. Of these thirteen cars, Burton & Briel honored the drafts on four. Shields, unquestionably, is entitled to recover the advances on these cars, which amount to $914.08. We are not at all impressed by appellant's contention that he is entitled to offset against this amount losses on other cars not accepted by Burton & Briel. Each car shipped was a separate and distinct enterprise on which appellant risked eighty per cent and respondent twenty per cent of the guaranteed price on the hazard of Burton & Briel dishonoring the draft.

Of the other nine cars, six were rejected by Burton & Briel because the apples did not measure up to specifications as to size. The cars were shipped from Spokane. Neither appellant nor respondent saw them before shipment. It seems to us that the duty was as much on respondent as on appellant to see to it that apples shipped to Burton & Briel complied with the specifications of the order. Respondent was the agent of Burton & Briel, and received the orders from

them. In any event, the contingency was not provided for in the contract.

Respondent contends, however, that he is entitled to recover the advances on these cars by reason of the following facts: Cleveland shipped the cars to Richmond, Virginia, consigned to himself "advise Burton & Briel." When Burton & Briel rejected them, Cleveland sold them through other dealers in the east. This is not shown to be an unusual method of shipment on consignment. Indeed, it would be folly for the shipper to ship directly to the consignee, as will be shown in the discussion of events that transpired in relation to the remaining three cars.

These cars, Burton & Briel obtained possession of and sold without paying the drafts. Cleveland filed claims against the railroad companies on account of the wrongful delivery of the cars to Burton & Briel. The respondent contends that he is entitled to recover the advances on these cars, because he offered to make a settlement with appellant by which he would take over the claims against the railroad companies, which offer the appellant rejected.

It seems too plain for argument that to sustain this contention of respondent, or his contention with respect to the six cars rejected by Burton & Briel, would necessitate our writing into his contract terms which he and appellant left out. At most, on these nine cars respondent is entitled only to an accounting for one-half the profits realized on each car over and above the guaranteed price.

The judgment of the trial court is modified, and the cause remanded with directions to enter judgment in favor of respondent in the sum of $914.08.

BEALS, C. J., TOLMAN, MAIN, and STEINERT, JJ., concur.